LYDIA H. WHITSON

*v.*

PARKER GROSVENOR.

*Opinion filed December 22, 1897.*

1. CONVEYANCES—*when statute operates to transfer grantor's after-acquired title to grantee.* Section 7 of the Conveyance act (Rev. Stat. 1874, p. 273,) operates to transfer the grantor's after-acquired title to the grantee only when the grantor has, by covenants in his deed, warranted his ownership and right to convey the title, while in fact he did not have the title, but acquired it after making the deed.

2. SAME—*grantor and his heirs estopped to assert after-acquired title.* Where a grantor not having title to property has warranted his ownership and right to convey by covenants·in his deed, both he and his heirs are estopped to assert a title to such property acquired by him after making the deed, as such title vests at once, by operation of law, in the grantee.

3. SAME—*interest acquired by heirs by descent, after grantor's death, is not transferred as "after-acquired title."* Where a mother, son and daughter each own an undivided interest in land, and the daughter conveys her interest to the son by warranty deed and dies leaving heirs, upon the subsequent death of the mother, intestate, one-half of her interest descends to the heirs of the daughter, and does not pass to the son, under the daughter's deed, as after-acquired title.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. JOSEPH P. ROBARTS, Judge, presiding.

This. is a writ of error prosecuted to review a decree of the Jackson circuit court sustaining a demurrer to a bill in chancery filed by plaintiff in error and other complainants against defendant in error, and dismissing the bill at cost of the complainants.

The bill alleges: "That on, to-wit, the ....th day of .........., A. D. 1847, John Grosvenor, theretofore and then a resident of said county of Jackson, died at his home therein, intestate, seized and possessed of the north-west quarter and the north-west quarter of the south-west quarter of section 30, township 8, south, range 4, west of ·the third principal meridian, in said county; that at his

death he left him surviving, as his widow, Agnes Grosvenor, and as his children and only heirs-at-law, Parker Grosvenor, Mary Crain (formerly Mary Grosvenor) and Martha Grosvenor, to whom his real estate, subject to the dower right and estate of the said Agnes Grosvenor therein, descended in equal parts, each of them being entitled to one undivided one-third; that the dower interest of said Agnes Grosvenor in said lands was never assigned, though she continued for some considerable time, the exact duration of which your orators cannot now state, to occupy the same, and subsequently, and on, to-wit, the 19th day of July, A. D. 1849, intermarried with one Peter Kiefer, after which, though the exact date is to your orators unknown, she removed with him to DeSoto, in said county, where they two continued to reside until the date of her death, as hereinafter alleged; that subsequent to the death of said John Grosvenor, and on, to-wit, the first day of March, A. D. 1857, the said Martha Grosvenor died intestate, without issue, she having never been married, whereby her one-third interest in said lands (there having never been any division or partition of said lands among the said heirs of the said John Grosvenor) descended in unequal parts to her mother, the said Agnes Kiefer, (*nee* Grosvenor,) her brother, Parker Grosvenor, and her said sister, Mary Crain, the said Agnes taking two shares, equal to one undivided sixth of all said lands, and the said Parker and Mary each taking one share or part, equal to one undivided one-twelfth part of the whole of said lands; that subsequent to the death of said Martha, and on, to-wit, the first day of February, A. D. 1861, the said Mary Crain, together with Willis Crain, her husband, by her deed of that date, of warranty as to herself and husband only, the said deed containing no covenant that her heirs should warrant the title conveyed thereby, conveyed all her then interest in said lands, in said deed professing to convey an undivided half thereof to her brother, the said Parker Grosvenor, and subse-

quently, and on, to-wit, the....th day of........., A. D.
18...., died at said county intestate, leaving surviving
her as her husband the said Willis Crain, and as her chil-
dren and only heirs-at-law your orators, Ida May Ward,
Lydia H. Whitson, Halleck Crain and Albert Crain, but
left no estate, property or effects, of any character, to
descend to her heirs; that subsequent to the death of said
Mary Crain, and on, to-wit, the 27th day of March, A. D.
1891, the said Agnes Kiefer died at said county of Jack-
son intestate, whereby her undivided one-sixth part of
said lands so as aforesaid inherited from the said Martha
Grosvenor descended to her said son, Parker Grosvenor,
and to your said orators, Ida May Ward, Lydia H. Whit-
son, Halleck Crain and Albert Crain, her grandchildren,
so that he, the said Parker Grosvenor, is now the owner
of an undivided eleven-twelfths of all of said lands, and
your orators are the owners, jointly and together, of the
remaining one-twelfth thereof, the share of each of them
in the same being equal to one undivided forty-eighth
part of the whole of said lands; that although the said
Parker Grosvenor and your orators are all and each
adults, yet he and they have not been able to come to
any amicable agreement for a division or partition of
said lands, and that no such division or partition has
ever been made, nor have any proceedings at law or in
equity ever been had or instituted for such division or
partition."

The bill further alleges that defendant, Grosvenor,
ever since the abandonment of the premises by Agnes
Kiefer, has been and yet is in the sole and exclusive pos-
session of said lands and premises and in the enjoyment
of the rents and profits, which have uniformly and from
year to year been of great value, to-wit, the clear yearly
value of $600, yet he has never accounted to complain-
ants, or any of them, for their or his or her just or equal
share of such rents and profits, and concludes with the
usual prayer for account and partition, and for process.

170—18

S. W. TREESH, and R. J. STEPHENS, for plaintiff in error.

HILL & MARTIN, for defendant in error.

Mr. JUSTICE BOGGS delivered the opinion of the court:

It is urged as ground of demurrer that it appears from the face of the bill the defendant had had the sole and exclusive possession of the land therein described for a period of twenty years prior to the filing of the bill, and therefore the right of action of complainants, if any they ever had, was barred by the Statute of Limitations. We need not pause to consider whether the possession of the defendant, as alleged in the bill, was such in its nature and character as would avail to set the Statute of Limitations in operation against a co-tenant, for the reason it does not appear from the allegations of the bill when the defendant entered into such possession nor how long he has held the same. It is true, the bill states, as counsel for defendant in their argument insist, that the defendant went into possession when Mrs. Kiefer abandoned the premises and moved to DeSoto, but the date of such removal does not appear. The averments of the bill relied upon by the defendant to support this insistence are as follows: "That the dower interest of said Agnes Grosvenor in said lands was never assigned, though she continued for some considerable time, the exact duration of which your orators cannot now state, to occupy the same, and subsequently, and on, to-wit, the 19th day of July, A. D. 1849, intermarried with one Peter Kiefer, after which, though the exact date is to your orators unknown, she removed with him to DeSoto, in said county, where they two continued to reside until the date of her death, as hereinafter alleged." It will be observed the statement is expressly made that "the exact date" of the removal of Mr. and Mrs. Kiefer from the land is unknown to the complainants. The court could not determine

from the face of the bill when the defendant succeeded to the possession of the land, and therefore could not properly rule it appeared the right of complainants to be heard had been barred by the efflux of time.

The remaining ground of demurrer relied upon by counsel for defendant in error is, that the execution and delivery of the warranty deed by Mrs. Crain, mother of the complainants, to the defendant, estopped Mrs. Crain from afterwards asserting an adverse title, or that, by operation of the provisions of section 7, chapter 30, of the Revised Statutes, any title subsequently acquired enured at once to her grantee, the defendant in the bill, and the further contention of defendant in error the provisions of the statute or the rule of estoppel acted with like effect upon any title after-acquired by the complainants, they being children and heirs-at-law of said Mrs. Crain, the grantor.

It is not necessary, in order to correctly determine the contention, we should consider the point urged by counsel for plaintiffs in error that, said grantor being at the time of the execution of the deed a *feme covert,* had no power, under the then existing law as to the rights of married women, to legally bind herself by a covenant; or the other point, also urged by the same counsel, that it appears from the statement of the bill the covenant was so qualified and limited that it was the personal undertaking of the grantor alone, and was not, and did not purport to be, obligatory upon her heirs, for the reason it clearly appears the grantor, Mrs. Crain, did not, at any time after the execution of the deed, acquire any interest or title in the land, nor did the complainants, her children, inherit from her any such title or interest or any property or effects whatever.   She died insolvent and before the death of her mother, Mrs. Kiefer.  When she executed the deed she owned an undivided five-twelfths interest in the land.   Her brother, the defendant, also owned an undivided five-twelfths, and Mrs. Kiefer owned

the remainder, being an undivided two-twelfths in fee, and also a dower interest in the entire premises. It appeared from the bill Mrs. Kiefer retained the title to the two-twelfths interest until her death, which occurred in 1891. She died intestate, and the title possessed by her descended, under the first clause of section 1, chapter 39, of the Revised Statutes, entitled "Descent," one-half to her son, Parker, the defendant in error, and the other half to the plaintiffs in error, her grandchildren, in common.

No argument is necessary to support the assertion the title possessed by Mrs. Kiefer in the premises during her lifetime was in nowise affected by the covenant in the deed executed by Mrs. Crain. Such title, wholly unaffected by such covenant, remained in Mrs. Kiefer, and passed at her death to those designated by the statute to take such title as her heirs. Had Mrs. Crain survived her mother, Mrs. Kiefer, and acquired title by descent from her after the execution of the deed, a question would have arisen whether such title enured at once, under the statute, to the defendant in error because of the covenants of warranty in the deed, or whether Mrs. Crain would have been deemed estopped from asserting it as adverse to that which she covenanted to convey and warrant by her deed.

The statutory provision on the rule of estoppel sought to be invoked by defendant in error in support of the decree sustaining the demurrer is not applicable to the state of case disclosed by the bill. The statute is as follows:

"Sec. 7. If any person shall sell and convey to another, by deed or conveyance purporting to convey, an estate in fee simple absolute in any tract of land or real estate lying and being in this State, not then being possessed of the legal estate or interest therein at the time of the sale and conveyance, but after such sale and conveyance the vendor shall become possessed of and confirmed in the legal estate to the land or real estate so sold and con-

veyed, it shall be taken and held to be in trust and for the use of the grantee or vendee; and the conveyance aforesaid shall be held and taken, and shall be as valid, as if the grantor or vendor had the legal estate or interest at the time of said sale or conveyance."

It has application only when a grantor who, by covenants in a deed, has warranted he is the owner and has the right to convey the title to the premises he purports to convey, had not such title but afterwards acquires it, in which case the statute operates to transfer such after-acquired title to the grantee in the deed with the same effect as if the grantor had been possessed of the after-acquired title at the time of the execution of the deed. The rule of estoppel denies such grantor the right to assert such after-acquired title. And it is also true the heirs of such grantor would take no interest in the title so afterwards acquired by their ancestor, for the reason such title would not remain in him to descend to any one, but by operation of law would vest at once in his grantee. But in the case at bar the grantor did not afterwards succeed to any further title in the premises than that possessed when the deed was executed. The complainants do not claim any interest in the premises by, through or under such grantor, but from an entirely distinct and independent source.

It does not appear from the allegations of the bill the plaintiffs were estopped to assert the title derived by them from their grandmother, Mrs. Kiefer, or that the statute hereinbefore referred to had any potency to divest them of such title. The demurrer should have been overruled.

The decree must be and is reversed and the cause remanded.